UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

JOHN PRICE,

        Plaintiff,    **REPORT AND RECOMMENDATION**
                 **09 CV 4183 (NGG) (LB)**

  -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF CORRECTION,

        Defendants.

------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

  Plaintiff, John Price, brings this *pro se* action against the City of New York and the New York City Department of Correction ("DOC"), under the Americans with Disabilities Act ("ADA").[1] Plaintiff alleges defendants discriminated against him by failing to reasonably accommodate his disability and that they retaliated against him. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Honorable Nicholas G. Garaufis referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendants' motion to dismiss should be granted in part and denied in part.

---

[1] Plaintiff's third amended complaint ("complaint" or "Compl."), doc. 24, does not allege the statutory basis of his claim but his Right to Sue letter, dated July 10, 2009, from the U.S. Department of Justice references the ADA. See Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs.' Memo. of Law"), doc 29 at 4; Declaration of Assistant Corporation Counsel Courtney B. Stein in Support of Defendants' Motion to Dismiss the Third Amended Complaint ("Stein Decl.") Ex. I, doc. 28-9 at 2.

## BACKGROUND

Plaintiff has been a New York City Correction Officer for almost 15 years. Compl. ¶ 1. He is currently assigned to the Eric M. Taylor Center ("EMTC") on Rikers Island. Id. During the course of his employment at DOC, plaintiff injured his knees and broke his right hand twice, and states that he is disabled as a result. Id.; Supplemental Declaration of Assistant Corporation Counsel Courtney B. Stein in Further Support of Defendants' Motion to Dismiss the Third Amended Complaint ("Stein Supp. Decl.") Ex. L, doc. 32-1 at 3. Plaintiff includes a two-page Notice of Decision from the New York State Workers' Compensation Board regarding a hearing held on March 26, 2002, which found plaintiff to have a "permanent partial disability" with loss of use of the left leg (10 percent schedule loss) and loss of use of the right hand (7.5 percent schedule loss) as a result of an accident occurring on June 12, 1998. Appendix to Third Amended Complaint ("Compl. Appx."), doc. 24-1 at 1-2. The Notice directs DOC or the insurance carrier to make an award covering six months for plaintiff's left leg injury and four months for plaintiff's right hand injury. Id.

Plaintiff's injuries, which plaintiff describes as severe, are documented in medical, DOC E.E.O., and DOC personnel files. Compl. ¶¶ 1, 2. Plaintiff states that these injuries continue to limit the pressure he can put on his knees. Reply to Defendant [*sic*] Motion to Dismiss ("Pl.'s Reply") ¶ 2, doc. 31. Plaintiff states that the pain in his knees also "limits [him] socially and on [the] job." Id.

Plaintiff further alleges that his injuries have gotten worse, Compl. ¶ 2, in part because his work requires him to respond to emergency situations by suiting up with 40 pounds of riot equipment, running down long corridors, and up and down stairways. Pl.'s Reply ¶ 2. At the same time, plaintiff admits that he is "not overwhelmed" and that his injuries could have been

worse. Id.

**Plaintiff's allegations of discrimination and retaliation**

On March 10, 2008, plaintiff met with the Warden of the EMTC, Joandrea Davis, to request a "Rikers Island parking pass (handicap)" and "reasonable accommodation because of [his] disabilities with [his] knees." Compl. ¶ 2. Plaintiff states that although the Warden was aware of the severity of his disabilities and he told her he was disabled under the ADA, his request for a pass was denied. Id. The pass would have enabled plaintiff to access the handicap parking in front of the Command building where he was assigned, taking some of the pressure off of his knees. Pl.'s Reply ¶ 2. Plaintiff states that he was disparately treated by Warden Davis and her supervisory staff, since co-workers received handicap passes and were reasonably accommodated with tours and posts.[2] Compl. ¶ 2.

Plaintiff credits DOC with having "recently" put new handicap parking spaces in the East Side of Rikers Island, which has shortened the distance he has to walk to get to his assigned Command. Pl.'s Reply ¶ 2. According to defendants, plaintiff also acknowledged that he did eventually receive a handicap parking pass. Defs.' Memo. Of Law, doc. 29 at 6 n.5. However, plaintiff's reply alleges that DOC is reserving the handicap parking in front of the Command building for "prefer[red] individuals." Pl.'s Reply ¶ 2.

In addition to the failure to accommodate his disability in March 2008 by denying him the handicap parking pass in front of his Command building, plaintiff alleges that DOC has retaliated against him as a result of his having: 1) filed a lawsuit in this Court on July 22, 2003 against DOC for race and age discrimination, which settled on June 7, 2005; and/or 2)

---

[2] The record contains a May 29, 2008 memo from plaintiff to Warden Davis requesting "a steady tour on the 1 x 9 tour," Compl. Appx., doc. 24-1 at 8., but plaintiff does not allege this request was denied.

3

successfully appealed his May 24, 2007 termination from DOC to the Civil Service Commission ("CSC") which modified the penalty for a disciplinary violation from termination to a suspension. See Compl. Appx., doc. 24-1 at 11-12; Stein Decl. Exs. C-E, docs. 28-3 to 28-5; see also docket entries 1 and 39 in case number 03 CV 3558 (NGG)(LB).[3]

Specifically, plaintiff alleges the following acts were retaliation: on March 20, 2008, his Personnel Captain was rude and demeaning towards him and told him that she knew nothing of a post assignment that had been offered to him (Compl. Appx., doc. 24-1 at 3-4); from March through June 2008 plaintiff was denied "Night Differential Pay" (Compl. ¶ 2(B)); on an unspecified date but before June 10, 2008,[4] Warden Davis told plaintiff that he had to go through the Firearm Review Board ("the Board") to change the designation on his identification card from a "No Firearm" to a full carry designation (Compl. ¶ C); however, on December 19, 2008, the Board denied plaintiff's request for a firearm for a one-year period (Stein Decl. Ex. F, doc. 28-6); on October 17 and 31, 2008, and then again on July 23, 2009, plaintiff was denied "Overtime Pay" (Compl. ¶ 2(B) and 2(D)); and finally, sometime after May 7, 2009 and under a newly appointed Warden and Deputy Warden,[5] plaintiff was threatened that he would lose his steady post and tour, informed that his post was being cut due to budget cuts in the department; and was taken off the 1300 x 2131 hour tour (a tour that plaintiff alleges consistently pays

---

[3] Plaintiff alludes to another lawsuit against DOC in 2008. For example, plaintiff's March 2008 memorandum to Warden Davis states that plaintiff is convinced that his Personnel Captain's approach towards him "is retaliatory because of the intense litigation [he] now [has] pending against the Department." Compl. Appx., doc. 24-1 at 3. The complaint also states that "[s]oon after the lawsuit was filed in Court that was when the retaliation became more blatant" and then relates, as retaliation, an event that occurred in June 2008. Compl. ¶ 2(C). However, the Court's records do not reflect that plaintiff filed a lawsuit against DOC in 2008 and these references may relate to plaintiff's 2003 action or his 2007 appeal of his termination to the CSC.

[4] Plaintiff's letter to Warden Davis regarding the firearm designation is dated June 10, 2008. See Compl. Appx., doc 24-1 at 10.

[5] Plaintiff's EEOC Charge dated May 7, 2009 names Davis as the current Warden. See Stein Decl. Ex. H, doc. 28-8.

4

overtime). Compl. ¶ 2(D).

**Procedural history**

Plaintiff filed a charge of discrimination with the EEOC on May 7, 2009. In it, plaintiff states:

> I have been subjected to on going retaliation for having advocated for my rights under Title VII of The Civil Rights Act of 1964, as amended for having filed a charge in the past. My current commanding officer, Warden Davis has and continues to play a role in denying my right to carry a firearm. I was assigned to extremely violent commands which caused me to be injured on the job. The above Respondent has denied my request for a parking permit as an accommodation in violation of the Americans with Disabilities Act. I would like to request a notice of right to sue.

Stein Decl. Ex. H, doc. 28-8. The EEOC issued plaintiff a Right to Sue letter on July 10, 2009. Stein Decl. Ex. I., doc. 28-9.

On September 29, 2009, plaintiff timely filed his original complaint in this Court. Doc. 1. On December 8, 2009, defendants requested a pre-motion conference seeking leave to move to dismiss plaintiff's complaint. Before that conference was held, plaintiff filed an amended complaint on January 4, 2010. Doc. 14. The Court held a conference on January 21, 2010 and plaintiff was granted leave to file a second amended complaint in order to address a number of defects in his amended complaint, including that many of his claims appeared to be time-barred and that he had failed to specify his disability. See doc. 23 (the Court's Order dated April 9, 2010).

However, plaintiff's second amended complaint was even more deficient than his prior amendment as plaintiff thought that his second amended complaint would supplement, rather than replace, his amended complaint. Id. The second amended complaint again failed to specify dates and again failed to specify the nature of plaintiff's disability. Id. Defendants were

prepared to move to dismiss plaintiff's second amended complaint. Id. Instead, the Court gave plaintiff one more chance to correct his pleading by filing a third amended complaint. Id.

Plaintiff filed his third amended complaint on April 21, 2010. Doc. 24. Defendants now move to dismiss plaintiff's third amended complaint (hereinafter "complaint"). Plaintiff opposes defendants' motion, doc. 31, and defendants have filed a reply. Docs. 32-33.

## DISCUSSION

**Standard of Review**

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[6] the Court must accept all factual allegations in the complaint as true, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing among others Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n.1 (2002)), and draw all reasonable inferences in the plaintiff's favor. Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "'merely consistent with' a defendant's liability," id. (quoting Twombly, 550 U.S. at 557), or "speculative," Twombly, 550 U.S. at 555, he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[6] Defendants move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that the Court lacks subject matter jurisdiction over plaintiff's claims that are time-barred under the relevant statute of limitations. Defs.' Memo. of Law, doc. 29 at 18. However, "[a] motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)." Kriss v. Schenectady City Sch. Dist., No. 1:08-CV-0230 (GTS/RFT), 2010 WL 3338949, at *4 (N.D.N.Y. Aug. 24, 2010) (quoting Garner v. DII Indus., LLC, No. 08-CV-6191-CJS, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) and citing Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989)). See also Zimmelman v. Teachers' Ret. Sys. of the City of New York, No. 08 Civ. 6958(DAB/DF), 2010 WL 1172769, at *5 (S.D.N.Y. March 8, 2010) (noting that "a motion to dismiss on the basis that a plaintiff failed to file a timely administrative charge is analyzed under Federal Rule of Civil Procedure 12(b)(6)") (citations omitted). Therefore, the Court analyzes defendants' instant motion under Federal Rule of Civil Procedure 12(b)(6).

Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nonetheless, "[a] document filed *pro se* is to be liberally construed ... a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation and citation omitted); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (other citations omitted).

On a motion to dismiss, the Court may consider, in addition to the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated into the complaint by reference, any document whose terms and effects the complaint relies heavily upon, and public documents. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (deeming public disclosure documents filed with the Securities and Exchange Commission as included in the complaint) (citation omitted). In addition, the mandate to read a *pro se* plaintiff's papers liberally makes it appropriate for the Court to consider factual allegations contained in plaintiff's opposition papers (Pl.'s Reply, doc. 31), to the extent they are consistent with the allegations in his complaint. Richardson v. Dept. of Corr., No. 10 Civ. 6137(SAS), 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011) (citing Burgess v. Goord, No. 98 Civ.2077(SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999)); see also Agu v. Rhea, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in

plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).[7]

**Plaintiff's claims are not time-barred**

Defendants argue that the complaint is barred in part by the statute of limitations. Specifically, defendants state that since plaintiff's discrimination charge was filed with the EEOC on May 7, 2009, all claims that accrued before July 22, 2008 are time-barred. Defs.' Memo of Law, doc. 29 at 17.

Under the ADA, a claim must be filed with the EEOC in New York within 300 days of the the alleged unlawful employment practice or challenged discriminatory act. See 42 USC § 12117(a); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.")

Here, plaintiff's charge of discrimination is dated May 6, 2009 and received stamped by the EEOC on May 7, 2009. Stein Decl. Ex. H, doc. 28-8. However, plaintiff's opposition to the instant motion states that he filed his "discrimination complaint on September 12, 2008 in the office [of the] EEOC." Pl.'s Reply ¶ 1. Defendants' supplemental declaration attaches the document that plaintiff filed in the EEOC on September 12, 2008: the EEOC intake questionnaire. Stein Supp. Decl. Ex. L, doc. 32-1.

Although defendants argue that the intake questionnaire is not a proper charge of discrimination because plaintiff did not sign the form, the Court disagrees. In Fed. Express Corp.

---

[7] Thus, although defendants served plaintiff with the requisite notice under Local Civil Rule 12.1, see doc. 27, the Court will not convert the motion to one for summary judgment given the exhibits the Court has considered on this motion were either attached to the pleadings, referenced in the complaint, matters of public record, documents in plaintiff's possession, or documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action. See e.g. Stein Decl. Ex. E (CSC's decision and findings In the Matter of the Appeal of John Price v. NYC Department of Correction, dated January 23, 2008; Stein Decl. Ex. H (plaintiff's EEOC charge of discrimination, filed May 7, 2009).

v. Holowecki, 552 U.S. 389 (2008), the Supreme Court held that an intake questionnaire could be deemed a charge.[8]

> "We conclude as follows: In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."

Id. at 402.

There is no dispute that the intake questionnaire filed by plaintiff contains the name of the charged party and an allegation that plaintiff was discriminated against. However, defendants argue that a signature is required to file a charge of discrimination and that if no signature is presented, the EEOC cannot investigate the allegations. In support, defendants' supplemental declaration attaches portions of the EEOC's compliance manual as well as page shots of their website. Stein Supp. Decl. Exs. M and N, docs. 32-2 and 32-3.

Although not cited by defendants, the relevant EEOC regulations do require that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. However, the regulations also state that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge" and that "[s]uch amendments ... will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). Although the EEOC website cited by defendants states: "[d]on't forget to sign your letter. If you don't sign it, we cannot investigate it."

---

[8] As Holowecki was an age discrimination case filed under the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. §621 et seq. ("ADEA"), the Court was careful to "note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces..." 552 U.S. at 393. Therefore the Court warned "employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Id. (citation omitted). Although the Court has not found ADA cases in this Circuit where Holowecki has been applied, a few courts have applied Holowecki in the Title VII context. See Winston v. Mayfair Care Center, Inc., No. 09 CV 4792 (ARR)(LB)(E.D.N.Y. March 4, 2011) (unpublished opinion & order); Morrow v. Metro. Transit Auth., No. 08 CIV. 6123(DLC), 2009 WL 1286208 (S.D.N.Y. May 8, 2009). As neither party has raised nor briefed this issue, there has not been the careful and critical examination given to the issue that the Supreme Court suggests.

Stein Supp. Ex. N, doc. 32-3 at 2. That statement is immediately followed by "[y]our letter will be reviewed and if more information is needed, we will contact you to gather that information or you may be sent a follow up questionnaire. At a later date, we will contact you and may put all of the information you sent us on an official EEOC charge form and ask you to sign it." Id. This does not clearly inform plaintiff that the questionnaire he filed would not be acted upon. More importantly, as the Supreme Court stated in Holowecki, 552 U.S. at 406:

> "Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted."

Although plaintiff's intake form is not signed or verified, such technical defects can be cured under the relevant EEOC regulations. See 29 C.F.R. § 1601.12(b). The instant record demonstrates that plaintiff's questionnaire was a request for the EEOC to act on his discrimination claim in September 2008. The Court notes that the agency charge number reflected on the May 2009 charge of discrimination, 520-2008-05069 (Stein Decl. Ex. H, doc. 28-8), is written across the top of the September 12, 2008 intake questionnaire (Stein Supp. Decl. Ex. L, doc. 32-1). This begs the question why a 2008 number was assigned to plaintiff's 2009 charge if the questionnaire was not taken as a request for agency action? The Court further notes that plaintiff checks the box for sex, age and retaliation when asked the basis for his claim of employment discrimination, Stein Supp. Decl. Ex. L, doc. 32-1 at 2, but later checks the box "[y]es, I have an actual disability" and states he is alleging discrimination because of "damage to the left and right knees, as well as the right hand being broken twice." Id. at 3.

The Court must construe the record in the light most favorable to plaintiff. Accordingly, the Court concludes that plaintiff's EEOC intake questionnaire is a charge of discrimination.

Therefore, defendants' motion to dismiss all of plaintiff's claims that pre-date July 11, 2008 as time-barred should be denied.

**Plaintiff's claim for disability discrimination**

Defendants also argue that the complaint should be dismissed because it fails to state a claim of discrimination under the ADA. "Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity'." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (citing 42 U.S.C. § 12112(b)(5)(A)). A plaintiff who alleges a claim of disability discrimination must show: "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Id. (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)). "A plaintiff has to adequately allege all the elements of these claims in order to survive a motion to dismiss; a finding that a plaintiff has failed to plead with sufficient specificity any one of the elements is enough to support a dismissal of the claim." O'Neill v. Hernandez, No. 08 Civ. 1689(KMW)(RLE), 2009 WL 860647, at *5 (S.D.N.Y. March 31, 2009).

Defendants here argue that plaintiff has failed to state a claim that he is disabled under the ADA. A person is disabled under the ADA if: A) they have a physical or mental impairment that substantially limits one or more of the person's major life activities; B) they have a record of such an impairment; or C) they are regarded as having such an impairment. 42 U.S.C. §

12102(1). Under the first definition of disability, a court must determine whether (1) the plaintiff has a physical impairment; (2) the impairment affects a major life activity in which the plaintiff is involved; and (3) the major life activity is substantially limited because of the impairment. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). All three elements must be satisfied to be an ADA-recognized disability. Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).

The ADA does not define the term "impairment" but the EEOC's regulations do, and this Circuit has consistently looked to EEOC regulations with "great deference" in determining whether a person is disabled under the ADA. Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 79 (2d Cir. 2000). The regulations define "[p]hysical or mental impairment" as:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

Although plaintiff does not describe his limitations with particularity, the alleged injury to his knees and hand, coupled with ongoing knee pain which limits his ability to walk long distances, suggests some form of physiological condition affecting plaintiff's musculoskeletal system. See Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *4 (N.D.N.Y. Jan. 7, 2008) (the ADA's definition of impairment met where plaintiff "suffers from cartilage deterioration in his knee and apparently walks with a limp"); Le Prevost v. New York State, No. 03 Civ. 2544(DAB), 2006 WL 2819582, at *6 (S.D.N.Y. Sept. 29, 2006) * 6 (a sprained ankle may constitute an impairment).

With respect to the major life activity affected by plaintiff's impairment, plaintiff notes that he has difficulty walking and working. Pl.'s Reply ¶ 2 ("it put limits on my activities in sports and long walks" and "it put limits ... socially and on job"). Walking and working are considered "major life activities" under the ADA. See 29 C.F.R. 1630.2(i); Cody v. County of Nassau, 577 F.Supp.2d 623, 639 (E.D.N.Y. 2008) (finding walking and working to be major life activities).

Contrary to defendants' assertion, plaintiff has also adequately pled that his impairment substantially limits a major life activity. The Second Circuit applies the EEOC's definition of "substantially limits":

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); Colwell, 158 F.3d at 643).[9] In short, the ADA protects only a limited class of individuals who suffer from impairments significantly more severe than those encountered by ordinary individuals, and not if the impairments interfere only in a minor way with the performance of a major life activity. Sussle v. Sirina Prot. Sys., 269 F.Supp.2d 285, 300 (S.D.N.Y. 2003) (quotations and citations omitted).

The duration or expected duration of an impairment is one factor that should be considered in determining whether an individual is substantially limited in a major life activity. 29 C.F.R. ¶

---

[9] "In 2008, Congress passed the ADA Amendments Act ('ADAA') which 'substantially changed how courts are to evaluate ADA claims'." Parada v. Banco Indus. de Venezuala, C.A., No. 10 Civ. 0883(SHS), 2011 WL 519295, at *4 n.4 (S.D.N.Y. Feb. 15, 2011) (quoting Young v. Precision Metal Prods., Inc., 599 F.Supp.2d 216, 223 (D.Conn. 2009) and the ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553). However, "courts have uniformly decided that the ADAA will not be retroactively applied to conduct that preceded its effective date" of January 1, 2009. Parada, 2011 WL 519295, at *4 n. 4 (citations omitted). In this case, as plaintiff alleges defendants discriminated against him in 2008, the Court will not apply the ADAA to his claim.

1630.2(j)(2). Thus, "temporary conditions do not constitute actionable disability" under the ADA. Guary v. Upstate Nat'l Bank, 618 F.Supp.2d 272, 275 (W.D.N.Y. 2009) (citations omitted). Defendants argue that plaintiff's condition was temporary, but plaintiff repeatedly alleges that his impairment continues to limit his ability to walk and work. See Compl. ¶¶ 1, 2; Pl.'s Reply ¶ 2. Thus, plaintiff's condition, as pleaded, is not temporary. See Fouad v. Jeport Hotel Corp., No. 01 Civ. 8502(GBD), 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5, 2005) (motion to dismiss denied, where among other things, plaintiff alleged, contrary to defendants' contention, that his impairment was not temporary).

Moreover, plaintiff states facts from which one could infer that his impairment substantially limits his ability to walk. Plaintiff alleges that his injuries are severe, that he is limited in the pressure he can place on his knees, that he is unable to take long walks, and that he is limited socially and in the leisure activities he can participate in. Compl. ¶ 2; Pl.'s Reply ¶ 2. The fact that DOC has provided plaintiff with a parking pass, albeit not for the lot he seeks, may support plaintiff's position that his impairment substantially limits his ability to walk.

Notably, "[t]he function of a motion to dismiss is merely to assess the legal feasibility of the complaint." Cousins v. Howell Corp., 52 F.Supp.2d 362, 365 (D.Conn. 1999) (declining to dismiss ADA complaint where plaintiff stated she was limited in her ability to walk for lengthy periods) (internal quotation and citation omitted). Discovery will flesh out whether plaintiff is disabled within the meaning of the ADA. Indeed, courts at the summary judgment stage have held that the inability to walk long distances or to climb stairs does not in itself substantially limit an individual's ability to perform a major life activity. See Sussle, 269 F.Supp.2d at 312 (plaintiff's inability to walk long distances and fatigue from climbing stairs did not qualify as a substantial limitation); Shaw v. Greenwich Anesthesiology Assocs., P.C., 137 F.Supp.2d 48, 55

n.7 (D.Conn. 2001) (inability to walk long distances not a substantial limitation); Vaughnes v. United Parcel Serv., Inc., No. 97 Civ. 5849(SHS), 2000 WL 1145400, at *6 (S.D.N.Y. Aug. 14, 2000) (inability to walk long distances without pain not a substantial limitation); Hazeldine v. Beverage Media, Ltd., 954 F.Supp. 697, 704 n.2 (S.D.N.Y. 1997) (inability to walk long distances not a significant restriction on a major life activity).

In light of the facts alleged in the complaint, it would be premature to dismiss plaintiff's disability claim on the instant motion. See e.g. Brtalik v. S. Huntington Union Free Sch. Dist., No. CV-10-0010, 2010 WL 3958430, at *9 (E.D.N.Y. Oct. 6, 2010) (denying motion to dismiss even though the court was doubtful plaintiff's allegations, including a knee injury and heel pain, constituted an ADA disability).

For purposes of this motion, plaintiff meets the other elements of an ADA discrimination claim outlined in Brady: "that his employer is subject to the ADA"; "that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"; and "that he suffered an adverse employment action because of his disability". Brady, 531 F.3d at 134. However, even assuming he meets all the elements, plaintiff may have difficulty proving that he was denied a reasonable accommodation where DOC provided him with a disabled parking pass, albeit not for the lot he desired. However, even with respect to the reasonableness of an accommodation, it is premature at this stage of the litigation to dismiss plaintiff's claim on this basis. See Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F.Supp.2d 419, 425 (E.D.N.Y. 2008) (plaintiff's reasonable accommodation claim not dismissed even where defendants argued it was unreasonable as a matter of law) (citing Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995)) (reversing district court's dismissal of plaintiff's ADA reasonable accommodation claim where determination of whether the modification was reasonable was fact

15

specific).

Construed in the light most favorable to plaintiff, the complaint states a plausible claim of discrimination under the ADA. "As a matter of substance, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Kuck v. Danaher, 600 F.3d 159, 162 (2d Cir. 2010) (internal quotations and citations omitted). Accordingly, it is respectfully recommended that defendants' motion to dismiss plaintiff's discrimination claim under the ADA should be denied.

**Plaintiff's retaliation claim**

The ADA forbids employers from retaliating against employees who engage in protected activities. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citing 42 U.S.C.§ 12203(a)). To sustain a retaliation claim, plaintiff must allege that he: 1) engaged in a protected activity; 2) defendant knew of the activity; 3) an adverse employment action was taken; and 4) there exists a causal connection between the protected activity and the adverse employment action. Emmons v. City Univ. of New York, 715 F.Supp.2d 394, 410 (E.D.N.Y. 2010) (citing Treglia, 313 F.3d at 719). Unlike a claim for discrimination under the ADA, plaintiff need not allege a disability to state a claim for retaliation under the ADA. Emmons, 715 F.Supp.2d at 410.

Plaintiff has adequately pled the first three elements of a retaliation claim: A "protected activity" for purposes of a retaliation claim "refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citations omitted).[10] Plaintiff's 2003 lawsuit against DOC alleging discrimination on the basis of race and age is protected activity, albeit under Title VII rather than the ADA. In contrast,

---

[10] The Court relies on Title VII and ADA cases in this section as the Circuit has "conclude[d] that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

16

plaintiff's appeal to the CSC is not protected activity, because it was merely opposition to his termination on a disciplinary violation, rather than opposition to any "unlawful employment practice". See 42 U.S.C. § 2000e-3(a); and cf Brands-Kousaros v. Banco Di Napoli S.P.A., No. 97 Civ. 1673, 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997) ("the protected activity alleged must involve some sort of complaint about a type of discrimination that Title VII forbids").

In addition, DOC knew of plaintiff's 2003 lawsuit and plaintiff alleges defendants' adverse employment actions included denial of preferred tours and posts, overtime pay, and the right to carry a firearm. These actions all would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted). See also Treglia, 313 F.3d at 720.

However, plaintiff has not adequately pled, even under the liberal standard afforded a *pro se* litigant, the fourth element: that there exists a causal connection between the protected activity and the challenged adverse employment action. Plaintiff has not presented any facts, other than his conclusory allegation of retaliation, from which one could infer a causal connection between his protected activity and defendants' alleged adverse actions. See Keller v. Star Nissan, Inc., No. 07-CV-4551 (ENV)(SMG), 2009 WL 4281038, at *3 (E.D.N.Y. Nov. 30, 2009) (plaintiff's conclusory use of terms such as "retaliation" insufficient to plead a Title VII retaliation claim); Reyes v. City University of New York, No. 06 Civ. 3639(CM), 2007 WL 2186961, at *5 (S.D.N.Y. July 26, 2007) (cause of action for retaliation under Title VII dismissed where, among other things, "plaintiff pleads not a single fact tending to link" his protected activity to the adverse action). The DOC work schedule plaintiff submits does not provide a basis to infer disparate treatment. See Compl. Appx., doc. 24-1 at 21-55.

There is also no alleged temporal proximity between his protected activity and defendants' adverse action. Here, plaintiff's protected activity occurred in 2003, that case settled in June 2005, and the adverse actions he alleges were retaliation occurred in 2008-2009, over three years later. Although the Second Circuit has not drawn a bright line as to the outer limits of temporal proximity, Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001), in the absence of any other facts, three years cannot "suggest a plausible scenario of a causal connection." Reyes, 2007 WL 2186961, at *5-6 (absent any other allegation, time lapse of 18 months could not state a claim for retaliation); see also Shanahan v. New York, No. 10 Civ 0742, 2011 WL 223202, at *5 (S.D.N.Y. Jan. 24, 2011) (time lapse of a year could not state a claim of retaliation under the ADA).

As plaintiff's complaint fails to state facts to demonstrate a causal connection between his protected activity and his claim of retaliation under the ADA, it is respectfully recommended that defendants' motion to dismiss plaintiff's retaliation claims should be granted.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion to dismiss plaintiff's claim of disability discrimination should be denied, and defendants' motion to dismiss plaintiff's retaliation claims should be granted. In addition, as plaintiff has been given two opportunities to amend, the Court should not grant plaintiff leave to re-plead with respect to his retaliation claims. Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (ordinarily a court should not dismiss without granting a *pro se* plaintiff leave to amend at least once where there is any indication that a valid claim might be stated).

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: March 9, 2011
       Brooklyn, New York