D/F

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 22 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN N. PRICE
                Plaintiff,

-against-

THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF CORRECTION,

                Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**

09-CV-4183 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff John N. Price, pro se, brings this action against the City of New York and the New York City Department of Correction. (3d Am. Compl. ("Compl.") (Docket Entry # 24).) Plaintiff alleges that Defendants discriminated against him in violation of the Americans with Disability Act ("ADA") by failing to reasonably accommodate his disability. (Id.) Plaintiff further alleges that Defendants retaliated against him. (Id.) Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry ## 27, 28, 29.) On November 9, 2010, the court referred Defendants' Motion to Dismiss to Magistrate Judge Lois Bloom for Report and Recommendation ("R&R") pursuant to Federal Rule of Civil Procedure 72(b). On March 9, 2011, Judge Bloom recommended that the court grant Defendants' motion with respect to the retaliation claim, but deny Defendants' motion with respect to the discrimination claim. (R&R (Docket Entry # 40).) The R&R was served on all parties, and objections were due by March 28, 2011. (Id. at 19.)

On March 23, 2011, Defendants objected in part to the R&R, arguing that Plaintiff's claim of discrimination should be dismissed. (Def. Objection to R&R (Docket Entry # 41).) Plaintiff has not filed any objection, and the time to do so has passed. As set forth below,

1

Defendants' Motion is granted in part and denied in part. The court assumes familiarity with the facts of this case.

I.  **STANDARD OF REVIEW**

In reviewing a motion to dismiss, the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." Twombly, 555 U.S. at 555.

Where a plaintiff proceeds pro se, the court reads his or her submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Even a pro se complaint, however, will be dismissed if it does not contain sufficient, plausible factual matter to state a claim. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

In reviewing the report and recommendation of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000); see also Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM) (JO), 2010 U.S. Dist. LEXIS 23620, at *3 (E.D.N.Y. Mar. 15, 2010) ("Where no

2

objection to the Report and Recommendation has been filed, the district court need only satisfy itself that there is no clear error on the face of the record.") (internal quotation marks and citation omitted). The district court reviews de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1).

## II. DISCUSSION

### A. Retaliation

Judge Bloom recommended dismissal of Plaintiff's retaliation claim, finding that Plaintiff failed to state facts that establish a causal connection between his protected activity and his claim of retaliation under the ADA. (R&R at 18.) Because no party has objected to this portion of the R&R, the court reviews it for clear error. The court has reviewed the record and Judge Bloom's thorough and well-reasoned R&R for clear error and found none. Therefore, the court adopts this portion of the R&R, and notes that the parties have waived further judicial review of this issue by failing to object. See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."). Accordingly, the court dismisses Plaintiff's retaliation claim with prejudice.

### B. Discrimination

Defendants object to Judge Bloom's recommendation that the court deny dismissal of Plaintiff's discrimination claim, for two reasons. First, Defendants argue that the claim is time-barred because Plaintiff failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within the 300-day limitations period. (Def. Objection to R&R at 1-2; Def. Mem. (Docket Entry # 29) at 14-15.) Defendants argue that "plaintiff first filed his EEOC

3

Charge of Discrimination on May 7, 2009, and thus, all ADA claims that accrued prior to July 22, 2008 are time barred." (Def. Objection to R&R at 1-2.) Although Defendants acknowledge that Plaintiff filed an Intake Questionnaire with the EEOC on September 12, 2008—a date that was well-within the 300-day statute of limitations—they contend that "the Intake Questionnaire was not a charge of discrimination in this instance because it was unsigned and was not served upon the Defendants." (Id. at 2; see also Def. Reply (Docket Entry # 33) at 3-4, Exh. M, N.)

Second, Defendants argue that "plaintiff is not 'disabled' within the meaning of the ADA, and has not alleged a plausible ADA claim." (Def. Objection to R&R at 3; see also Def. Mem. at 8-12.) Specifically, Defendants contend that "plaintiff has not adequately alleged [the] 'severity, duration, or impact'" of his injuries, and that Plaintiff has made no "allegation from which causation could possibly be inferred." (Def. Objection to R&R at 3.)

The court considers these arguments and reviews the portion of Judge Bloom's report that addresses the discrimination claim de novo.

### 1. Plaintiff's Claim Is Not Time-Barred

Plaintiff's ADA claim is subject to the time limitations set forth in Section 706(e)(1) of the Act. See 42 U.S.C. § 12117(a) (providing that the procedures set forth in Section 706 apply to claims arising under the ADA). In accordance with this provision, Plaintiff had 300 days from the time of the alleged unlawful employment practice to file a charge with the EEOC in New York. See 42 U.S.C. § 2000e-5(e)(1) (300-day limitations period for filing an EEOC charge applies where the "person aggrieved has initially instituted proceedings with a State . . . agency with authority to grant or seek relief from such practice"); see also Tewksberry v. Ottaway

Newspaper, 192 F.3d 322, 325 (2d Cir. 1999).[1] This requirement "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Tewksberry, 192 F.3d at 325 (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998)).

Here, the EEOC received Plaintiff's charge of discrimination on May 7, 2009.[2] (Stein Decl. Ex. H (Docket Entry # 28-8).) Defendants argue that any employment action alleged to have occurred more than 300 days before the filing of this charge—relevant here, the alleged denial of Plaintiff's request for a handicapped parking pass in March 2008 (Compl. ¶ 2)—must be time-barred. The May 2009 charge was not, however, Plaintiff's first contact with the EEOC. In his Opposition to Defendants' Motion to Dismiss, Plaintiff stated that he filed his "discrimination complaint on September 12, 2008." (Pl. Opp. ¶ 1.) In a supplemental declaration to their Reply, Defendants included a copy of the September 12, 2008 document, an Intake Questionnaire that Plaintiff filed with the EEOC. (Stein Supp. Decl. Ex. L ("Intake Questionnaire") (Docket Entry # 32-1).)[3] The question for the court is whether this Intake Questionnaire constitutes a "charge." The court concludes that it does.

---

[1] The ADA Amendments Act, which became effective in January 1, 2009, does not apply retroactively. See Parada v. Banco Indus. de Venezuala C.A., No. 10 Civ. 0883(SHS), 2011 WL 519295, at *4 n.4 (S.D.N.Y. Feb. 15, 2011) (collecting cases in which others courts have "uniformly" reached this conclusion). Because Plaintiff's claims arose prior to 2009, the court evaluates them without respect to these amendments.

[2] Plaintiff dated the EEOC May 6, 2009, but the EEOC time-stamped the charge the following day. (Stein Decl. Ex. H (Docket Entry # 28-8).) This one-day discrepancy is of no consequence here.

[3] The Intake Questionnaire references other documents that Plaintiff submitted along with the EEOC form. (See Stein Supp. Decl. Exh. L at Question 5 (Plaintiff wrote "Attached Documents" and "Please refer" in response to question regarding description of discriminatory action). In their Reply, Defendants note that Plaintiff "attached approximately 45 pages of documents [to the Intake Questionnaire], most of which are attached to the Third Amended Complaint. Only the four-page questionnaire is attached as an exhibit hereto. The additional annexed documents are available to the Court upon request." (Def. Reply at 3, n.4.) Pursuant to the court's request, Defendants have now provided the court and Plaintiff with a complete copy of these attachments, which the court considers as part of the questionnaire. ("Attachments to Intake Questionnaire" (Docket Entry # 42-1).) Because the Intake Questionnaire and attachments are integral to Plaintiff's complaint, the court properly considers them here. See Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Wong v. Health First, Inc., No. 04-cv-10061, 2005 WL 1676705, at *3 (S.D.N.Y. July 19, 2005) (collecting cases of district court doing the same). Consequently, Defendants' Motion to Dismiss is not converted into a motion for summary judgment. See Fed. R. Civ. P. 12(d).

5

In Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), the Supreme Court considered whether an EEOC intake questionnaire was a "charge" for the purposes of time limitations in the context of an age discrimination claim. One of the plaintiffs in Holowecki completed an "Intake Questionnaire" that included basic information about herself and her employer, as well as an allegation that she and other employees had been victims of "age discrimination." Id. at 394. The plaintiff also attached a detailed six-page signed affidavit describing the alleged discriminatory practices, requesting that the EEOC "'[p]lease force Federal Express to end their age discrimination plan.'" Id. at 394, 405. Although the Court held that the EEOC "is not required to treat every completed Intake Questionnaire as a charge," it found that this plaintiff's questionnaire was sufficient. Id. at 405. In so doing, the Court held that a determination as to whether a document constitutes a charge must focus on whether an objective observer would reasonably understand the document as an attempt by the filer to "activate [the EEOC's] machinery and procedural mechanisms." Id. at 402. The Court concluded that:

> In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

Id. The Holowecki Court further held that this "permissive standard," under which "a wide range of documents might be classified as charges," best comports with the design and purpose of the statutory scheme. Id.

> In the administrative context now before us it appears *pro se* filings may be the rule, not the exception. The ADEA, like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the

6

purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft.

Id. at 402-03 (internal quotations and citations omitted).

The Supreme Court has not spoken on whether this same test extends to non-ADEA contexts. In Holowecki, the Court cautioned that whether that decision could be applied in cases brought under other statutes that the EEOC enforces (such as the ADA and Title VII) requires "careful and critical examination" of the relevant regulations. 552 U.S. at 393.

The court has carefully and critically examined 29 C.F.R. § 1601, the regulations that apply to both the ADA and Title VII. This set of regulations bears substantial similarity to the ADEA regulations at issue in Holowecki. See 29 C.F.R. § 1626. The most relevant difference between the ADEA and ADA/Title VII regulations concerns the stated requirements regarding the form of the charge. The ADEA regulations state: "A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 C.F.R. § 1626.6. By contrast, the ADA and Title VII regulations require that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9.[4] With this distinction in mind, the court finds the permissive standard announced in Holowecki applicable here.

Decisions of other courts support this same conclusion. The court is aware of no decision within this Circuit that has considered whether the Holowecki standard extends to the ADA. But a number of courts in other jurisdictions have applied this standard in

---

[4] The provisions in each set of regulations regarding the form a charge must take are quoted here in their entirety. Whereas the ADA and Title VII regulations require that a charge be made in writing and be signed and verified, the ADEA regulations impose no such requirement. This appears to be the only distinction the regulations make in terms of form in these two contexts.

7

ADA cases. See, e.g., Steiner v. Prof'l Servs. Industr., Inc., C.A. No. 08-723, 2009 WL 2950755 (W.D. Pa. Sept. 9, 2009). Similarly, federal courts in this Circuit have frequently applied Holowecki in assessing the timeliness of charges in Title VII cases. See, e.g., Winston v. Mayfair Care Cntr., Inc., No. 09 CV 4792 (ARR)(LB), at *7 n.1 (E.D.N.Y. Mar. 4, 2011) (unpublished decision and order) (collecting cases and noting that "because the EEOC's regulations setting forth the basic information required of a charge are almost identical under both [the ADEA and Title VII], federal courts have consistently applied Holowecki in the Title VII context"); Broich v. Inc. Vill. of Southampton, No. CV-080553 (SJF)(ARL), 2011 WL 284484, *6-7 (E.D.N.Y. Jan. 25, 2011); Morrow v. Metro. Transit Auth., No. 08 Civ. 6123 (DLC), 2009 WL 1286208, *5 n.6 (S.D.N.Y. May 8, 2009); Simpson v. City of N.Y. Dep't of Hous. Pres. & Dev., 08 Civ. 0185 (SHS)(KNF), 2009 U.S. Dist. LEXIS 58766, *16-19 (S.D.N.Y. April 13, 2009). These cases are instructive here because, as the same regulations govern both Title VII and the ADA, no distinction in the relevant regulations can counsel for a different result as to ADEA cases.

Accordingly, as both parties in this case acknowledge, Holwecki and its reasoning are applicable here. The Court must therefore assess whether (1) Plaintiff provided the EEOC with the information required by the relevant regulations, and (2) whether Plaintiff's Intake Questionnaire "must be reasonably construed as a request for the agency to take remedial action." 552 U.S. at 402.

*a. Information Required by ADEA Regulations*

Plaintiff's Intake Questionnaire clearly contains the name of the charged party and an allegation of discrimination. (Intake Questionnaire.) But unlike the ADEA regulations at issue

8

in Holowecki, see 29 C.F.R. §§ 1626.6, 1626.8, the applicable ADA regulations include an additional requirement that a "charge shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9. Defendants argue that Plaintiff's Intake Questionnaire is defective and cannot operate as a charge because he failed to sign it.[5] (Def. Reply at 3.)

Although Plaintiff failed to complete the signature line in Question 14 of his Intake Questionnaire, his signature appears on many of the pages included as attachments to that document, and Plaintiff references the attached documents within the questionnaire itself. (See Intake Questionnaire at 2 (in answer to Question 5, writing "Attached Documents . . . Please refer").) Furthermore, any technical defect in Plaintiff's September 12, 2008 filing was cured by his subsequent submission to the EEOC. The regulations state that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge" and that "[s]uch amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). In May 2009, Plaintiff filed a signed and verified charge with the EEOC. Both the September 2008 questionnaire and the May 2009 charge reference the same incidents of alleged discrimination and retaliation, and the EEOC assigned the same charge number to both documents. (Intake Questionnaire (Docket Entry # 32-2) (showing number 520-2008-05069 on September 12, 2008 questionnaire); Stein Decl. Ex. H (Docket Entry # 28-8) (showing same number on May 2009 charge).)

Additionally, to the extent that Plaintiff's filings create any ambiguities, the court must construe them in Plaintiff's favor in order to effectuate the core purposes of the ADA. As the Supreme Court stated in Holowecki:

---

[5] Defendants do not cite to the relevant regulations; rather, they attach portions of the EEOC's Compliance Manual and copies of portions of the agency's website. (Stein Supp. Decl. Exs. M, N (Docket Entries # 32-2, 32-3).) The court notes that Holwecki requires compliance with the regulations, not with EEOC policy expressed elsewhere.

> Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted.

552 U.S. at 406. Accordingly, construing the record in the light most favorable to the Plaintiff, and in accordance with the purpose of the remedial scheme, the court finds that Plaintiff's Intake Questionnaire, as amended by his May 2009 EEOC charge, satisfies the technical requirements of the ADA regulations.

### b. *Request for Agency Action*

Defendants' argument that Plaintiff's Intake Questionnaire does not constitute a request for the EEOC to take remedial action is entirely without merit. Defendants argue that the "fact that the questionnaire was never signed nor served upon the defendants is evidence of the fact that the intake questionnaire was not a request for the EEOC to act." (Def. Objection to R&R at 2.) This argument collapses the two distinct requirements articulated in Holowecki.

Whether a plaintiff's intake questionnaire can be reasonably construed as a request for agency action turns on whether it evinces an intent to "activate the administrative process." Like the questionnaire in Holowecki, Plaintiff's September 12, 2008 Intake Questionnaire satisfies this requirement.

Plaintiff's September 12, 2008 submission included extensive documentation that indicates that he intended to spur the EEOC to action at that time. In addition to providing information about his employer and alleging a basis for disability discrimination on his Intake Questionnaire (see Docket Entry # 32-1), Plaintiff submitted approximately 45 pages of additional documents (Attachments to Intake Questionnaire (Docket Entry # 42-1)). These documents describe Plaintiff's injuries and identify treatment that he alleges is discriminatory

and retaliatory. They include significant correspondence between Plaintiff and Defendants about the allegations of discrimination and retaliation, including multiple emails and letters from Plaintiff to his supervisors, responses to these communications, interdepartmental memoranda about Plaintiff's requests, and copies of internal complaints filed by and against Plaintiff. (See Attachments to Intake Questionnaire.) On both the questionnaire itself and in the attachments, Plaintiff's tone is forceful and direct, and he demands remedies for treatment he perceives as violative of the ADA.[6] (Intake Questionnaire; Attachments to Intake Questionnaire.) Like the six pages of documents the plaintiff in Holowecki attached to her questionnaire, Plaintiff's submissions taken as a whole and examined from the point of view of an objective observer are a clear attempt to "activate" the agency process on September 12, 2008.[7] The court therefore finds that Plaintiff's Intake Questionnaire is a "charge" for timeliness purposes.

---

[6] In the decision that preceded the Supreme Court's review of Holowecki, the Second Circuit identified the following characteristics as evidence of a plaintiff's intent to activate the administrative process: (1) the "forceful tone and content" of the plaintiff's submissions; (2) the fact that plaintiff had checked the "'consent' box on the questionnaire form" to allow disclosure of his identity; and (3) the plaintiff's "unambiguous[]" request that his employer's discriminatory practices end. Holowecki v. Federal Express Corp., 440 F.3d 558, 568-69 (2d Cir. 2006). The Intake Questionnaire that the Plaintiff in the instant case submitted does not include a consent box; but the whole of his submission to the EEOC, as well as his repeated prior complaints to his employer and union representative, indicate no intent to make an anonymous complaint. (See Intake Questionnaire; Attachments to Intake Questionnaire.) As noted above, Plaintiff's tone is forceful and his request that the discrimination end is unambiguous.

[7] The court notes, that the form of the Intake Questionnaire here differs from the form used in Holowecki—but to the extent that this difference is of any import, it seems to support Plaintiff's position. The Holowecki Court noted that the "design of the form in use" at that time did "not give rise to the inference that the employee requests action" by filing it. 522 U.S. at 405. "In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.'" Id. By contrast, the fine print at the end of the relevant form at issue in the instant case indicates that the EEOC *will*, in some cases, interpret an intake questionnaire as a charge. The questionnaire Plaintiff completed reads: "When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 C.F.R. 1601.12(b) and 29 C.F.R. 1626.8(b) consider it to be a sufficient charge of discrimination under the relevant statute(s)." (Intake Questionnaire at 4, n.3.)

### 2. Plaintiff Has Alleged a Disability and Stated a Prima Facie Case of Discrimination

Defendants also argue that the Complaint should be dismissed because it fails to state a claim of discrimination under the ADA. (Def. Mem at 8-12; Def. Objection to R&R at 3.) Here, Plaintiff requested an accommodation for his alleged disability: a handicapped parking pass in a lot closer to his entrance.[8] Because Plaintiff's claim is based on the denial of this request, the court reads his discrimination claim as a claim for failure to provide reasonable accommodation under Section 12112(b)(5)(A) of the ADA.[9]

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In addition to other forms of discrimination (such as disparate treatment and disparate impact), see 42 U.S.C. § 12112(b), discrimination includes an employer's failure to provide reasonable accommodation; that is

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

---

[8] Although, at some points, Plaintiff complains of the physical stress of his current job assignment, he elsewhere notes that he is "not asking to be accommodated with a post or a tour," but instead is focusing his request for accommodation on getting a parking pass. (Attachments to Intake Questionnaire at 2.) Plaintiff's additional references to his requests to change posts appear to relate only to his retaliation claim, which the court finds meritless.

[9] Defendants' objections to the R&R focus on Plaintiff's failure to adequately state facts that support a disparate treatment claim. (Def. Objection to R&R at 2.) Their Motion to Dismiss likewise focuses largely on disparate treatment and only briefly references Plaintiff's failure to accommodate claim. (See Def. Mem. at 8-9.) Because the court reads Plaintiff's remaining claim as a failure to accommodate claim, not a disparate treatment claim, Defendants' objections are addressed to the extent that they are relevant to that type of claim.

Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)).[10] An individual is otherwise qualified if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To establish a prima facie failure to accommodate claim, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations. Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006). "A plaintiff has to adequately allege all the elements of [his] claim[] in order to survive a motion to dismiss; a finding that a plaintiff has failed to plead with sufficient specificity any one of the elements is enough to support a dismissal of the claim." O'Neill v. Hernandez, No. 08 Civ. 1689 (KMW)(RLE), 2009 WL 860647, at *5 (S.D.N.Y. March 31, 2009).

Here, Defendants argue that Plaintiff has failed to adequately allege the first element—that he is disabled under the ADA. (Def. Mem. at 9-10; Def. Objection to R&R at 3.) A person has a "disability" as defined by the ADA if (a) he has a physical or mental impairment that substantially limits one or more of his major life activities; (b) he has a record of such an impairment; or (c) he is regarded as having such an impairment. 42 U.S.C. § 12102(1). Under the first definition of disability, a court must determine whether (1) the plaintiff has a physical impairment; (2) the impairment affects a major life activity in which the plaintiff is involved; and (3) the major life activity is substantially limited because of the impairment. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); see also Bartlett v. N.Y. State Bd. of Law Exam'rs, 226 F.3d 69, 79

---

[10] Defendants do not dispute that they are a covered employer within the meaning of the ADA.

(2d Cir. 2000) (discussing meaning of "impairment"). All three elements must be satisfied in order for a plaintiff's condition to qualify as an ADA-recognized disability. Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998). Here, Plaintiff has sufficiently alleged each of these factors.

a. Physical or Mental Impairment

The EEOC regulations define physical impairment as: "Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). And this Circuit has consistently looked to EEOC regulations with "great deference" in determining whether a person is disabled under the ADA. Bartlett, 226 F.3d at 79. Plaintiff alleges that he has a physical impairment—namely, permanent injuries to both knees and his right hand. (Compl. ¶ 1.) In support of this allegation, Plaintiff attached to his Complaint a notice of decision from the New York State Worker's Compensation Board, which documents his schedule loss of use, classifies his injuries as "Permanent Partial Disabilit[ies]," and awards him benefits temporarily. (Worker's Comp. Decision (Docket Entry # 24-1).) Therefore, the court concludes for purposes of this motion, that Plaintiff has a physical impairment.

b. Major Life Activity

"The term 'major life activit[y],' by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance." Bartlett, 226 F.3d at 79 (citations omitted; alteration in original). Although the ADA does not define "major life activity," the EEOC regulations implementing the ADA explain the term. And, while these

14

regulations are not binding, the Second Circuit has looked to them for guidance and affords them significant deference. See, e.g., Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (citing Francis v. City of Meriden, 129 F.3d 281, 283 n.1 (2d Cir. 1997) (stating that courts owe "great deference" to EEOC regulations interpreting ADA)).

The regulations enumerate activities that are "major life activities *per se*," Reeves v. Johnson Controls World Servs., 140 F.3d 144, 152 (2d Cir. 1998), including "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 28 C.F.R. § 35.104 (1999). "[T]his list . . . is meant to be illustrative and not exclusive." Bartlett, 226 F.3d at 79-80 (quoting Reeves, 140 F.3d at 150). Here, Plaintiff alleges that his disabilities affect the major life activities of working and walking. (Pl. Reply (Docket Entry # 31) at 2; Attachments to Intake Questionnaire at 2.) Plaintiff also alleges that his disabilities limit him with regard to activities which, on their face, may not reasonably be deemed "major." (See Pl. Reply ¶ 2 (discussing social and recreational activities, such as playing sports).) Nonetheless, because the regulations define walking and working as major life activities, Plaintiff has sufficiently pled that his injuries impact a major life activity.

   c. Substantially Limited

The EEOC regulations define "substantially limits" as:

(i)   Unable to perform a major life activity that the average person in the general population can perform; or

(ii)   Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

15

29 C.F.R. § 1630.2(j)(1); see also Colwell, 158 F.3d at 643 (applying this definition). They further state that the following factors should be considered in determining whether a person is substantially limited in a major life activity:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R § 1630.2(j)(2).

In objecting to the Judge Bloom's recommendation that Plaintiff's assertion that he has a disability should be read as sufficient to withstand a motion to dismiss, Defendants' primary argument is that "plaintiff has not adequately alleged [the] 'severity, duration, or impact'" of his injuries. (Def. Objection to R&R at 3.) The court disagrees with this characterization, and finds that Plaintiff has adequately pled that his impairment substantially limits a major life activity.

First, as to duration and permanence, Plaintiff's pleadings indicate that he sustained job-related injuries in 1998 and that the effects of these injuries are ongoing. (Compl. ¶¶ 1, 2; Pl. Reply ¶ 2; Attachments to Intake Questionnaire at 1-2). Plaintiff describes the challenges he faces in present tense. (See, e.g., Pl. Reply ¶ 2 (stating that his disability "puts limits on [his] activities"); Attachments to Intake Questionnaire at 2.) And, Plaintiff repeatedly describes his injuries as "getting wors[e]." (Pl. Reply ¶ 2; see also Attachments to Intake Questionnaire at 2 (stating that a medical specialist has advised Plaintiff that, as a result of his injuries, he has arthritis and is very likely to develop "water build up" over time).) Referencing the Worker's Compensation Board's 2002 decision, Plaintiff characterizes his condition as a "permanent and

16

partial disability." (Attachments to Intake Questionnaire at 2; see also Worker's Comp. Decision at 1-2.)[11]

Plaintiff also states facts that indicate the nature and severity of his impairment. He states that he has pressure in his knees, that he is unable to take long walks, and that he faces limitations in his personal life. (Compl. ¶ 2; Pl. Reply ¶ 2.) Plaintiff alleges that he is unable to run, jump, take walks, and stand while waiting in lines or riding the train. (Attachments to Intake Questionnaire at 2.) He describes his work environment as physically demanding, and is impacted in the normal, daily course of his work. (Id. (describing "[t]he long walk from the parking lot to the Main Control Building at the Front Gate and standing waiting for a route bus to take me to my assigned command," after which "I am walking consistently from escorting inmates, climbing stairs to responding to alarms and putting twenty (25) pound of riot gear on and running down long corridors for emergencies."); Compl. ¶ 1 (stating that he has "worked in the DOC most violent facilities"); Pl. Reply ¶ 2 (complaining that injuries impact him "on [the] job").) Plaintiff also states that he is limited in his ability to conduct his personal day-to-day affairs. (Attachments to Intake Questionnaire at 2 (noting limitations on his "personal life," including "walking, waiting in lines[,] standing on trains[, and] climbing stairs"); see also Pl. Reply ¶ 2.)

---

[11] Defendants characterize Plaintiff's injuries, as shown on the Worker's Compensation Board Notice of Decision, as "temporary," apparently because the benefits the Board awarded to Plaintiff were for a limited period. (Def. Objection to R&R (stating that the Worker's Compensation Board decision "showed that plaintiff was deemed 'permanent partial disable[ed] [sic] due to a 10.00% scheduled loss of the use of his left leg' from June 12, 1998 through December 31, 1998 and a '7.50% schedule loss of use of the Right Hand' from June 12, 1998, through October 20, 1998"); Def. Mem. at 10 (same).) On a motion to dismiss, this characterization is insufficient to overcome Plaintiff's contention that his disability is permanent. (See Fouad v. Jeport Hotel Corp., No. 01 Civ. 8502 (GBD), 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5, 2005) (denying motion to dismiss where defendant contended that plaintiff's injury was temporary, but plaintiff pled that it was not). The court also notes that the Worker's Compensation Board decision, on its face, describes each of Plaintiff's injuries as a "Permanent Partial Disability" despite the fact that the Board seems to have awarded benefits for a limited period of time. (See Worker's Comp. Decision at 1-2.) Defendants have provided no authority that suggests that in the context of a Worker's Compensation Board decision, categorization as a "Permanent Partial Disability" should be read to mean that Plaintiff's disability was "temporary."

In light of the facts alleged in the Complaint, it would be premature to dismiss Plaintiff's claim on the instant motion. See, e.g. Brtalik v. S. Huntington Union Free Sch. Dist., No. CV-10-0010, 2010 WL 3958430, at *9 (E.D.N.Y. Oct. 6, 2010) (denying motion to dismiss even though the court was doubtful plaintiff's allegations, including a knee injury and heel pain, constituted an ADA disability); see also Colwell, 158 F.3d at 643 (determination as to whether a plaintiff's impairment "substantially limits" a major life activity is an "individualized and fact-specific inquiry") (citations omitted). Given the liberal pleading standard for pro se litigants, Plaintiff has sufficiently alleged that he has a "disability."

There can be no dispute that Plaintiff has met the pleading requirements as to the second and third elements of his failure to accommodate claim: that his employer had notice of his alleged disability; and that he could perform the essential functions of his job with reasonable accommodation. Plaintiff alleges that he notified both his supervisor, Warden Davis, and his union representative, J. Bracco, about his need for accommodation (Compl. ¶ 2), and Plaintiff's correspondence with his supervisors is extensive and spans a period of several years (see Attachments to Intake Questionnaire). Plaintiff also states that he is able to perform the essential functions of his job once he arrives at his post. Plaintiff states that he continues to perform his job as a Correction Officer, albeit with some difficulty (Compl. ¶ 1), and that he is "not overwhelmed" by his current responsibilities (Pl. Opp. ¶ 2). (See also Attachments to Intake Questionnaire at 2 (stating that provision of a parking pass would allow him to relieve pressure on his knees, such that he could avoid additional injury and absenteeism).)

Plaintiff has also alleged the fourth element: that his employer refused to make reasonable accommodations. Plaintiff states that his initial request for a handicapped parking pass was denied. (Compl. ¶ 2.) He acknowledges, however, that during the course of this

litigation, Defendants have provided Plaintiff with a handicapped parking pass for a lot other than the one he requested. (Pl. Reply ¶ 2.) Plaintiff states that this accommodation, which allows him to park in a handicapped space on the East Side of Rikers Island and take a bus to his assigned Command, is insufficient. Although the parking space in the East Side lot is designated as "handicapped," it is far from Plaintiff's place of work and requires him to stand at a bus stop and take a bus to his post. (Def. Reply ¶ 2.) Plaintiff continues to request access to a handicapped parking space in front of the Command Building where he works, and he states that Defendants have continued to deny his request for a parking spot in the Command lot. (Id.)

There is nothing inherently unreasonable about requiring that an employer accommodate an employee by providing a reserved parking space, and "the determination of the reasonableness of such a requirement will normally require some development of a factual record." Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1516 (2d Cir. 1995) (finding that plaintiff stated a claim for disability discrimination where employer refused to pay $300-$520 per month for her to park in a parking lot near her office). Among the factors that may be relevant in making this determination are "the employer's geographic location and financial resources." Id. (citing Borkowski v. Valley Central Sch. Dist., 63 F.3d 131, 138-40 (2d Cir. 1995) (Rehabilitation Act); Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995) (reversing Rule 12(b)(6) dismissal).[12]

While the ADA "does not require the employer to provide every accommodation a disabled employee may request," it does require that "the accommodation provided is reasonable." D'Eredita v. ITT Corp., 370 Fed. Appx. 139, 141 (citing Fink v. N.Y. City Dep't of

---

[12] By providing Plaintiff with a handicapped parking pass for a lot, albeit one far from his duty station, Defendants arguably concede that Plaintiff qualifies for a pass, pursuant to their own policies. Regardless of the sufficiency of Plaintiff's claim that the ADA entitles him to something more, there is no question that the City would expend fewer resources by providing Plaintiff with a parking pass for Defendants' own Command lot, rather than continuing to litigate this case.

19

Personnel, 53 F.3d 565, 567 (2d Cir. 1995) (stating same rule in Rehabilitation Act context)). Plaintiff has sufficiently pled that his employer has denied his request for a reasonable accommodation. Although Defendants' proposed accommodation—a parking pass for a lot with bus access to Plaintiff's post—may well be a reasonable one, this issue is a question of fact that the court declines to resolve on a motion to dismiss.

### 3. Plaintiff Need Not Show Causation

Defendants argue that Plaintiff has failed to show causation, i.e. that Defendants took an adverse employment action against Plaintiff because of his disability. (Def. Objection to R&R at 3.) This element is required in order to make out a prima facie case for disparate treatment, but not for reasonable accommodation. Compare Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (stating elements of prima facie claim for reasonable accommodation) with Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004) (stating elements of prima facie disparate treatment claim). The court finds that Plaintiff's Complaint does not state facts that support a disability discrimination claim on a basis other than the alleged failure to provide reasonable accommodation. Accordingly, Defendants' causation argument is misplaced.

## III. CONCLUSION

Defendants' Motion to Dismiss is DENIED as to Plaintiff's claim for failure to provide reasonable accommodation, and GRANTED as to the remaining claims.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
   June 20, 2011

NICHOLAS G. GARAUFIS
United States District Judge