UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN N. PRICE,

                        Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF CORRECTION,

                        Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

09-CV-4183 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff John N. Price brought this action in 2010 against Defendants, the New York City Department of Correction (his employer) and the City of New York. Plaintiff's Third Amended Complaint (the "Complaint") alleges that Defendants discriminated against him in violation of the Americans with Disability Act, 42 U.S.C. § 12101 et seq. ("ADA"), by failing to reasonably accommodate his disability. Plaintiff further alleges that Defendants retaliated against him. In 2011, Defendants moved to dismiss both claims. This court granted Defendants' motion to dismiss as to Plaintiff's claim for retaliation but denied it as to Plaintiff's claim for failure to provide reasonable accommodation. Now before the court is Defendants' motion for summary judgment, seeking dismissal of Plaintiff's sole remaining claim: failure to reasonably accommodate Plaintiff's disability. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED. Plaintiff's claim for failure to reasonably accommodate his disability is DISMISSED with prejudice.

1

# I. BACKGROUND

## A. Factual Background

Plaintiff has been a New York City Department of Correction ("DOC") Officer for seventeen years. (3d Am. Compl. (Dkt. 24) ¶ 1; Def. 56.1 St.[1] (Dkt. 88) ¶ 6.) He is currently assigned to the Eric M. Taylor Center ("EMTC") on Rikers Island. (Def. 56.1 St. ¶ 26.) During the course of his employment at DOC, Plaintiff injured his knees and broke his right hand twice, and he states that he is disabled as a result. (Id. ¶¶ 7-12; Intake Questionnaire (Ex. L to Stein Supp. Decl. (Dkt. 32-1)) at 3.) In support of his Complaint, Plaintiff attached a two-page Notice of Decision from the New York State Workers' Compensation Board memorializing a hearing held on March 26, 2002, which found Plaintiff to have a "permanent partial disability" with loss of use of the left leg (10 percent schedule loss) and loss of use of the right hand (7.5 percent schedule loss) as a result of an accident occurring on June 12, 1998. (Not. Of Decision (App'x to 3d Am. Compl. (Dkt. 24-1)) at 1-2.)

Plaintiff submits that he injured his knee and hand during a "Use of Force" incident on February 28, 1998, while serving at Otis Bantum Correctional Center on Rikers Island. (Def.

---

[1] Plaintiff opposed Defendants' Motion for Summary Judgment by submitting a three-page, seven-paragraph affidavit (Dkt. 90), with no accompanying response to Defendants' 56.1 Statement (Dkt. 88). Accordingly, because Plaintiff failed to controvert—or at all address—Defendants' 56.1 Statement, each paragraph of which is supported by specific reference to admissible record evidence, Defendants' 56.1 Statement is deemed admitted. See Local Civ. R. 56.1(c); T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417-18 (2d Cir. 2009). "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (noting that Local Rule 56.1 should be interpreted to provide that "where there are [no] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion") (quotation marks and citations omitted). Accordingly, the court will cite to the Defendants' 56.1 Statement.

Nevertheless, in endeavoring to liberally construe the filings of pro se Plaintiff, including submissions that would not otherwise be considered evidence, such as certain assertions in the Complaint, this court will also refer to additional filings and evidence in the record to the extent appropriate and useful. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (indicating that a pro se litigant's submissions should be interpreted "to raise the strongest arguments they suggest"); see also Owens v. Longo, No. 06-CV-0281 (GLS) (DRH), 2008 WL 84594, at *1 n.2 (N.D.N.Y. Jan. 7, 2008) (stating that where a pro se plaintiff's responsive statement of material facts was not supported with citations to the record, "[w]here the court has determined that record support nonetheless exists, it will view the facts in the light most favorable to . . . the non-moving party").

56.1 St. ¶ 7; see Pl. Summ. J. Opp'n (Dkt. 90) at 11.) On March 2, 1998, Plaintiff visited a physician to address "acute trauma at the knee" as a result of the "Use of Force" incident, and the injuries were further evaluated on March 3, 1998, by a physician at Defendant DOC's Health Management Division ("HMD"). (Def. 56.1 St. ¶¶ 7-8.) That day, Plaintiff was returned to full duty. (Id. ¶ 10.) On June 12, 1998, Plaintiff again injured his knee and filed a Workers' Compensation claim. Following the hearing on March 26, 2002, Plaintiff was awarded a ten percent scheduled loss of use of his left leg, entitling him to 28.8 weeks of benefits from June 12, 1998, to December 31, 1998, at a rate of $400 per week. (Id. ¶¶ 11-12.)

Plaintiff's injuries, which he described as severe and worsening, are documented in medical, DOC E.E.O., and DOC personnel files. (3d Am. Compl. ¶¶ 1-2; see Pl. Mot. to Dismiss Opp'n ¶ 2 (Dkt. 31).) Plaintiff stated that these injuries continue to limit the pressure he can put on his knees and submits that his knee pain also "limits [him] socially and on [the] job." (Pl. Mot. to Dismiss Opp'n ¶ 2.) Plaintiff explains that he "ha[s] physical limitations" that have caused "pain and suffering for . . . years." (Pl. Summ. J. Opp'n ¶ 7.) Plaintiff further alleges that while he is "not overwhelmed" by his injuries, they have gotten worse, in part because his work requires him to respond to emergency situations by suiting up with forty pounds of riot gear, running down lengthy corridors, and maneuvering up and down stairs. (3d Am. Compl. ¶ 2; Pl. Mot. to Dismiss Opp'n ¶ 2.)

Plaintiff testified that on March 10, 2008, he verbally requested a "Gate 1" parking pass to his union representative, representatives of the DOC Equal Employment Opportunity Office ("EEOO"), Warden Joandrea Davis of the EMTC, and others. (Def. 56.1 St. ¶ 14.) Plaintiff asserts that his request was denied. (3d Am. Compl. ¶ 2.) Plaintiff states that he was disparately treated by Warden Davis and her staff because co-workers received handicap parking passes and

were reasonably accommodated with tours and posts. (Id.)

Plaintiff subsequently had his injuries examined again by two separate doctors. On November 1, 2010, Plaintiff was examined by his personal physician, Dr. Mark Joy, who diagnosed Plaintiff with "osteoarthritis" as an "ongoing condition." (Physician Report (Ex. 4 to Pl. Summ. J. Opp'n (Dkt. 90)) at 10.) On November 17 and December 10, 2010, Plaintiff was also examined by Dr. Herbert Kwasnik, director of Defendant DOC's HMD, who found no evidence of arthritis of the knees. (Def. 56.1 St. ¶ 18.) Plaintiff was returned to full duty on December 13, 2010. (Id. ¶ 19.)

In the course of this litigation, Plaintiff acknowledged that he did "appreciate and commend" the DOC for "recently" establishing certain handicap parking spaces that lessen his required walking distance and "will lessen some of the pressure off [his] knees," but Plaintiff asserts that DOC is reserving the handicap parking spaces in front of the Command building for "prefer[red] individuals." (Pl. Mot. to Dismiss Opp'n ¶ 2.)

**B.      Procedural History**

On September 29, 2009, Plaintiff commenced this action by filing his first Complaint. (Compl. (Dkt. 1).) On January 4, 2010, Plaintiff filed an Amended Complaint (Am. Compl. (Dkt. 14)), followed by a Second Amended Complaint on March 19, 2010 (2d Am. Compl. (Dkt. 19)). These complaints were deficient, and the court permitted Plaintiff to correct his pleadings by filing his operative Complaint on April 21, 2010. Plaintiff's Complaint alleges a failure to accommodate his disability in March 2008 because of Defendants' denial of a handicap parking pass in front of his command building, and also that DOC had retaliated against him in violation of the ADA. (3d Am. Compl. ¶ 1.) Defendants were given permission to file a motion to dismiss Plaintiff's claims (May 3, 2010, Order (Dkt. 25)), which they submitted on July 6, 2010

(Dkt. 29). The motion to dismiss was referred to Magistrate Judge Lois Bloom for report and recommendation ("R&R") (Nov. 9, 2010, Order), which Judge Bloom issued on March 9, 2011 (R&R (Dkt. 40)). The court adopted Judge Bloom's R&R and: (1) denied Defendants' motion to dismiss as to Plaintiff's claim for failure to provide reasonable accommodation; but (2) granted Defendants' motion to dismiss as to the remaining claims. (June 22, 2011, Mem. & Order (Dkt. 43).) Following additional discovery, on August 10, 2012, Defendants moved for summary judgment on the remaining claim for failure to provide reasonable accommodation. (Def. Summ. J. Mem. (Dkt. 86).) Plaintiff opposes the motion. (Pl. Summ. J. Opp'n.)

## II. STANDARD OF REVIEW

In considering this motion, the court notes that because the Plaintiff is proceeding pro se, the court is "obliged to construe [his] pleadings and papers liberally." LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir. 1991). Indeed, a pro se litigant's submissions are to be interpreted "to raise the strongest arguments they suggest." Burgos, 14 F.3d at 790.

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden to make this showing rests upon the party moving for summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is created by "specific facts" grounded in

5

testimony or other admissible evidence, not by "mere allegations or denials" of the adverse party's pleadings, id., "by the presentation of assertions that are conclusory," Patterson v. Cnty. of Onieda, N.Y., 375 F.3d 206, 219 (2d Cir. 2004), or "by conjecture[] or speculation" from the non-movant, Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Summary judgment must be granted "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support [her] case is so slight." Gallo v. Prudential Res. Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). In particular, it must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323 (citation omitted).

## III. DISCUSSION

Plaintiff's sole remaining claim in this action is that Defendants discriminated against him in violation of the ADA by failing to grant him a reasonable accommodation through their refusal to give him a specialized parking pass that would allow him to park in a lot adjacent to the Command facility where he works. Defendants here argue that Plaintiff fails to demonstrate that he is "disabled" within the meaning of the ADA, and that even had Plaintiff established that he is disabled, DOC has not refused to reasonably accommodate him. (Def. Summ. J. Mem.) Conversely, Plaintiff asserts in his opposition to summary judgment that he is disabled within the

meaning of the ADA because, in part, he "ha[s] 25% disability."[2] (Pl. Summ. J. Opp'n ¶ 5.)

After carefully reviewing the record and drawing all reasonable inferences in Plaintiff's favor, the court agrees with Defendants that Plaintiff's claim for failure to reasonably accommodate Plaintiff's disability fails as a matter of law.

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Second Circuit has explained one such type of discrimination under the ADA, an employer's failure to provide reasonable accommodation, as:

> "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)). An individual is "otherwise qualified" if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To establish a prima facie failure to accommodate claim, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and

---

[2] Plaintiff devotes the bulk of his summary judgment opposition to: (1) attacks against Defendants' counsel; and (2) arguments regarding purported discovery issues. (Pl. Summ. J. Opp'n ¶¶ 3-7.) Plaintiff asserts that Defendants' counsel has "withheld evidence," submitted "fraudulent documents," not "been truth[ful] with his knowledge of the case," and "made a number of alteration[s] in the questions and answers" to Plaintiff's deposition transcript. (Id.) The court finds no support for Plaintiff's baseless personal attacks against Defendants' counsel, and Plaintiff's discovery-related allegations were raised previously (Dkts. 77, 81, 82) and addressed and rejected by the court (May 23, 2012, Order (Dkt. 80); May 30, 2012, Order (Dkt. 83)).

(4) his employer refused to make such accommodations.[3] Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006). Here, Plaintiff fails to show that he is disabled within the meaning of the ADA.

A person has a "disability" as defined by the ADA if: (a) he has a physical or mental impairment that substantially limits one or more of his major life activities; (b) he has a record of such an impairment; or (c) he is regarded as having such an impairment. 42 U.S.C. § 12102(1). This definition requires that the court determine whether (1) the plaintiff has a physical impairment; (2) the impairment affects a major life activity in which the plaintiff is involved; and (3) the major life activity is substantially limited because of the impairment. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); see also Bartlett v. N.Y. State Bd. of L. Exam'rs, 226 F.3d 69, 79 (2d Cir. 2000) (discussing the meaning of "impairment"). All three elements must be satisfied in order for a plaintiff's condition to qualify as an ADA-recognized disability.[4] Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).

Plaintiff raises a genuine issue of fact as to the first two prongs of this analysis. While the ADA does not define the term "impairment," the Equal Employment Opportunity Commission ("EEOC") has issued administrative regulations that implement the ADA, and courts in the Second Circuit consistently look to EEOC regulations with "great deference" in determining whether a person is disabled under the ADA. See Bartlett, 226 F.3d at 79. Those regulations define "a physical or mental impairment" as, among other things, "a physiological

---

[3] Plaintiff asserts only federal claims. (See 3d Am. Compl. ¶ 2.) The court nevertheless notes that a state law disability-discrimination claim would also survive or fail on the same basis as an ADA claim. See Graves, 457 F.3d at 184 n.3 ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims." (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000))).

[4] As discussed in this court's Memorandum and Order adopting Judge Bloom's R&R (June 22, 2011, Mem. & Order, at 5 n.1), the ADA Amendments Act, which became effective in January 1, 2009, does not apply retroactively. Because Plaintiff's claims arose prior to 2009, the court evaluates them without respect to those amendments and applies relevant cases, such as Colwell, that were otherwise superseded by the amendments.

disorder or condition" that affects "one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

Plaintiff has testified and otherwise asserted in pleadings that his knees cause him pain and physical limitation, and he asserts that he is 25% disabled. (See, e.g., Pl. Summ. J. Opp'n ¶ 5.) Plaintiff argues generally that he "had gone through pain and suffering for more than ten years" and has "physical limitations . . . [and] pain and suffering for [a] good number [of] years and even now to this present date." (Id. ¶¶ 4, 7; see Pl. Dep. (Ex. D to Collyer Decl. in Supp. of Def. Summ. J. Mem. (Dkt. 89-3)) at 39:5-6 ("I never do prolonged walking because it irritates my leg."), 39:23-25 ("Q: Ever go for a run? A: Of course not. I can't. I can't play basketball or handball like I used to.").) Additionally, regarding Plaintiff's assertion that he is 25% disabled, he appears to have calculated this percentage by combining two Workers' Compensation Board awards arising from a June 12, 1998, incident. (See Notice of Decision (Ex. 5 to Pl. Summ. J. Opp'n (Dkt. 90)) at 48-49.) In a decision filed on April 3, 2002, Plaintiff was awarded 28.8 weeks of permanent partial disability compensation for a 10% schedule loss of the use of his left leg, totaling $11,520. (Id.) In an August 7, 2003, decision arising from the same incident, Plaintiff was awarded 18.3 weeks of permanent partial disability for a 7.5% schedule loss of the use of his right hand, totaling $7,320. (Id.) That finding further elaborated, in its "Decision" section, "[n]o protracted healing period. Overall 15% schedule loss of use of the right hand

appotioned [sic] 7 1/2 this file and 7 1/2 [to another file]."[5] (Id.) Finally, Plaintiff's personal physician diagnosed him in 2010 with "osteoarthritis" as an "ongoing condition" with an "indefinite" duration. (Physician Report at 10.) Defendants state in conclusory fashion that "plaintiff cannot show that he has a physical impairment." (Def. Summ. J. Mem. at 3.) But the Defendants' HMD physician finding no evidence of *arthritis* specifically (id.) does not demonstrate that there is no impairment at all because a physical impairment includes "[a]ny physiological disorder, or condition . . . affecting" the "musculoskeletal" system. 29 C.F.R. § 1630.2(h)(1). A reasonable fact-finder could conclude that Plaintiff has such an impairment. See Owens, 2008 WL 84594, at *4 (finding the ADA's definition of impairment met where the plaintiff "suffer[ed] from cartilage deterioration in his knee and apparently walk[ed] with a limp"); Le Prevost v. N.Y. State, No. 03-CV-2544 (DAB), 2006 WL 2819582, at *6 (S.D.N.Y. Sept. 29, 2006) (noting that a sprained ankle may constitute an impairment).

Regarding the second prong of the disability analysis, Defendants acknowledge that the life activities Plaintiff asserts are affected by his impairment, walking and working, are "both considered major life activities *per se*." (Def. Summ. J. Mem. at 4 (citing Reeves v. Johnson Controls World Servs., 140 F.3d 144, 152 (2d Cir. 1998)).)

However, Plaintiff's claim fails on the third prong of the disability analysis: he cannot raise an issue of fact as to whether he has an impairment that substantially limits these major life activities. The ADA protects only a limited class of individuals who suffer from impairments significantly more severe than those encountered by ordinary individuals, and not if the

---

[5] As discussed below, a Worker's Compensation decision or award is not dispositive regarding an ADA disability claim. The court nevertheless notes that Plaintiff's arguments regarding his failure to accommodate claim exclusively refer to his request for a parking pass due to issues with Plaintiff's knees. (See Pl. Dep. at 152:3-5 ("Q: Do you believe that a Gate 1 Pass would help with your hand as well? A: The Gate 1 ain't got nothing to do with my hand."); 3d Am. Compl. ¶ 2 ("I had made a request for a Rikers Island parking pass (handicap) . . . because of my disabilities with knees."); Pl. Mot. to Dismiss Opp'n ¶ 2 ("The access pass . . . would take some of the unnecessary pressure off my knees.").)

impairments interfere only in a minor way with the performance of a major life activity. See Sussle v. Sirinia Prot. Sys., 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) ("Thus, a plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible [to prevail upon a further showing of discrimination] if the limitation of the major life activity was not substantial." (alteration in original) (quoting Colwell, 158 F.3d at 641)). The Second Circuit applies the EEOC's definition of "substantially limits," which explains that an impairment substantially limits a major life activity where an individual is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); Colwell, 158 F.3d at 643. "'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree,' and thus clearly precludes impairments that interfere in only a minor way with performing manual tasks." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 185 (2002).

Having reviewed the available record evidence, the court concludes that Plaintiff has not presented facts sufficient for a reasonable jury to find that his knee condition substantially limits his ability to walk or work. Although Plaintiff has testified and asserted that walking for long distances causes him pain, and his personal physician diagnosed Plaintiff with "osteoarthritis" and indicated a limitation of "no prolonged standing or walking," Plaintiff's testimony shows that he is not substantially limited by his knee condition. Plaintiff testified to the following:

- As part of his employment, depending on his various daily assignments, Plaintiff currently "do[es] quite a bit of walking," including escorting inmates from inside the facility to the mess hall at a distance of "four to six blocks walking, going one way" and regularly works posts that require him to stand for "at least four or five hours" or that

11

require "constant" standing (Pl. Dep. at 103, 95, 106, 110);

- as part of his employment, Plaintiff restrained and controlled an inmate who was trying to assault a colleague sometime after 2008, and "could have picked [the inmate] up if [Plaintiff] needed to" (id. at 113);

- outside of his employment, Plaintiff is unassisted in running errands and shopping, including regularly "walk[ing] seven or eight blocks" to the post office (id. at 28-29);

- Plaintiff sometimes takes walks for fun (id. at 39);

- Plaintiff travels without restriction by his doctor, including driving for multiple hours and walking around (id. at 38);

- Plaintiff performs daily activities without assistance (id. at 31); and

- Plaintiff does not regularly take medication for his condition (id. at 5-6).

Even assuming that Plaintiff's knees cause him pain, or that he suffers from osteoarthritis, this is not enough to establish substantial limitation. See Hazeldine v. Beverage Media, Ltd., 954 F. Supp. 697, 703 (S.D.N.Y. 1997) ("A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." (quotation marks and citation omitted)). Courts in this Circuit repeatedly have held that the inability to, e.g., walk long distances or climb stairs does not in itself substantially limit an individual's ability to perform a major life activity. See Sussle, 269 F. Supp. 2d at 312 (holding that the plaintiff's inability to walk long distances or to climb stairs did not qualify as a substantial limitation); Shaw v. Greenwich Anesthesiology Assocs., P.C., 137 F. Supp. 2d 48, 55 n.7 (D. Conn. 2001) (finding that limitations including inability to walk long distances not a substantial limitation); Vaughnes v. United Parcel Serv., Inc., No. 97-CV-5849 (SHS), 2000 WL 1145400, at *6 (S.D.N.Y. Aug. 14, 2000) (finding that no substantial limitation existed where plaintiff "[could not] walk for long distances without pain, and must hold on to a handrail when descending stairs"); Hazeldine, 954 F. Supp. at 704 n.2 (S.D.N.Y. 1997) (finding no substantial limitation where plaintiff needed to

"stop and rest" after "climbing stairs, raking leaves, doing housework or walking more than five city blocks"). Courts have established "a relatively high bar when determining when the activity of walking has been substantially limited." Vaughnes, 2000 WL 1145400, at *6. Even viewing Plaintiff's assertions and evidence in the light most favorable to him, he fails to meet that bar.

Plaintiff similarly fails to put forth sufficient evidence that he is substantially limited in his ability to work. In addition to the evidence discussed above, Plaintiff testified that he can handle the job, including dealing with inmate altercations, despite his impairment. (Pl. Dep. at 116.) Indeed, there is no evidence that Plaintiff is unable to perform his duties or is otherwise substantially impaired from being able to continue at his job, much less that his impairment "foreclose[s] generally the type of employment involved" as required for ADA coverage. See Hazeldine, 954 F. Supp. at 705 (quotation marks and citation omitted). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). Plaintiff neither asserts nor submits evidence that he is unable to work in his current job, much less that he is unable to work in a broad class of jobs.

Summary judgment therefore is proper as to Plaintiff's claim for failure to reasonably accommodate because he has failed to make an evidentiary showing sufficient to establish that a reasonable jury could find that his condition substantially limits a major life activity as defined by the ADA and interpreted by relevant precedent. Accordingly, Plaintiff has not established that he has a disability within the meaning of the ADA, and his action must be dismissed for failure to set forth a prima facie case of disability-based discrimination.[6]

---

[6] Because the court finds dispositive the issue of whether Plaintiff is disabled under the ADA, it need not and does not address the question of whether Defendant DOC refused to reasonably accommodate him.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. Plaintiff's ADA reasonable accommodation claim is DISMISSED with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                s/Nicholas G. Garaufis

Dated: Brooklyn, New York            NICHOLAS G. GARAUFIS
       March 19, 2013                      United States District Judge